UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA LYNN DAVIS,

               Plaintiff,                Case No. 2:15-cv-12644
                                                Judge Matthew F. Leitman
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 19),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Teresa Lynn Davis, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 15), the

1

Commissioner's cross motion for summary judgment (DE 19), Plaintiff's reply (DE 20), and the administrative record (DE 10).

## A.    Background

Plaintiff filed her application for DI benefits on May 25, 2012, alleging that she has been disabled since September 1, 2011, at age 41.  (R. at 206-208; *see also* R. at 226-227.)  Plaintiff alleges disability as a result of arthritis, neck fracture, degenerative disc disease, injuries to spine and scoliosis.  (R. at 228-236.) Plaintiff's application was denied on September 6, 2012.  (R. at 64-75, 76, 77, 82-91.)

On September 13, 2012, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 92; *see also* R. at 262-266.)  ALJ Kim L. Bright held a video hearing on January 15, 2014, at which Plaintiff was represented by counsel and a Vocational Expert (VE) testified.  (R. at 31-63; *see also* R. at 200-202, 203-205.)  On March 20, 2014, ALJ Bright determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-30.)

Plaintiff requested review of the hearing decision.  (R. at 7.)  On May 29, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Bright's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on July 28, 2015. (DE 1.)

**B.      Plaintiff's Medical History**

Plaintiff alleges in the field office disability report that she has been disabled since September 1, 2011. (*See* R. at 226.) Her medical records span the period from August 27, 2010 to August 26, 2013. (R. at 299-379 [Exhibits 1F-11F].) Of particular importance are the records from Plaintiff's primary care provider, Rohit Verma, M.D., who treated Plaintiff on approximately 33 occasions from August 27, 2010 through May 28, 2013. (R. at 322-333 [Ex. 4F], 343-363 [Ex. 7F].)

Although Dr. Verma's records will be discussed in further detail below, his most-recent statements are briefly summarized here, as the sole issue in this appeal is whether the ALJ appropriately assessed the opinion evidence:

> The **physical RFC assessment** noted that, as a result of Plaintiff's chronic back pain, Plaintiff had certain exertional limitations (could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, needed frequent changes in position, and would need to lie down at unpredictable intervals during an 8 hour work day (2 to three times per week)). Plaintiff's chronic back pain and neck fracture resulted in several postural limitations (occasional twisting and stooping (bending) and never crouching, climbing stairs or climbing ladders). Plaintiff's neck fracture resulted in manipulative limitations (reaching, handling, fingering, feeling and pushing/pulling). Also, Dr. Verma opined that Plaintiff should avoid all exposure to several environmental restrictions.
>
> In the **spinal medical source statement**, Dr. Verma opined that Plaintiff had chronic pain/paresthesia and severe headache pain

3

associated with impairment of the spine.  In addition, Dr. Verma
assessed Plaintiff as having several exertional, postural and
manipulative limitations.

(R. at 367-370 [Ex. 9F] & 371-376 [Ex. 10F].)[1]

### C.     Hearing Testimony

#### 1.     Plaintiff's Testimony

Plaintiff was 44 years of age at the time of the January 15, 2014 hearing.  (R.

at 38.)  She testified that she was 227 pounds the last time she was weighed and

had lost some weight over the prior year, due (at least in part) to Dr. Verma's

provision of Adipex.  (R. at 38-39; *see also* R. at 46.)  She has a driver's license;

however, it was suspended at the time of the hearing, because she received a ticket

for driving on expired tags while "doing a favor for someone" and was unable to

pay it.  (R. at 39-40.)

Plaintiff testified that she is divorced and has three children, ages 25, 22 and

18.  On a typical day, she does not do much.  She gets up at 10:00 a.m. or 11:00

a.m.  She can get dressed, comb her hair and clean up after herself.  (R. at 44.)  She

does not always prepare meals for herself, because sometimes she cannot stand

long enough to do so.  (R. at 44, 53.)  During the day, she visits with friends,

watches television (for 7-8 hours, but will have to get up to move around), lies

---

[1] Dr. Verma also completed a mental medical source statement.  (R. at 364-366
[Ex. 8F]).  However, it is not summarized here.  As noted below, this report limits
its review to the ALJ's treatment of opinion evidence as to Plaintiff's physical
limitations and its effect upon the resulting RFC.

4

down on the couch (for six hours between 9 a.m. and 5 p.m., but not all at one time) or sits up in a chair.  (R. at 44, 52-53.)  She has a cell phone and prefers talking on it to texting.  Sometimes she goes to the grocery store, but, before moving in with friends, relied on her daughter to do it most of the time, and similarly relied on her children for yardwork.  (R. at 41, 45 & 51.)  Plaintiff has vacuumed, but it hurt her arm and shoulders.  (R. at 52.)

With respect to medications, Plaintiff testified that she takes Lorcet for pain, Xanax for anxiety, Zoloft for depression, Zyrtec and nose spray for her sinuses, breathing treatments / Albuterol, a bladder pill, and Prilosec for heartburn.  (R. at 45-46.)  The bladder medication gives her dry mouth.  Plaintiff admitted to smoking but stated she is trying to quit.  (R. at 47.)

As for back pain, Plaintiff explained that she has undergone an MRI and x-rays, but she has not had physical therapy or injections; she only has medication.  (R. at 47-48.)[2]  She has not seen a neurologist, apparently because she has to rely on others to drive her places and she has no income.  When asked why she believes she is unable to work, Plaintiff testified that her body will not let her, explaining that she hurts too much, cannot lift anything, and has neck pains which go into her

---

[2] Plaintiff testified that the last time she underwent an MRI for her back or neck was during 2013.  (R. at 53.)  However, the only MRIs in the medical record seem to be those of her spine performed on February 23, 2012.  (R. at 377-378.)  Likewise, the only x-rays in the medical record seem to be those of her abdomen, pelvis and chest performed on April 23, 2013.  (R. at 338-342.)

brain.  (R. at 48.)  Lately, she has experienced these headaches "[a]ll the time . . . ." (R. at 49.)  Prior to that, she experienced such headaches maybe four or five times per month, and they would last two or three hours.  When these headaches occur, she experiences nausea.  She uses a neck brace at night and sometimes during the day.  (R. at 50.)  She will also use a heating pad for pain relief.  (R. at 51.)

Plaintiff testified that she can sit for 10 or 15 minutes before needing to move or stand, she can stand about 15 minutes before needing to sit down, she can walk about 10 or 15 minutes before needing to stop and she can lift about 10 pounds without hurting herself.  (R. at 49.)  Plaintiff has been using a cane for "a couple years . . ." since Dr. Verma prescribed it.  Plaintiff reported experiencing numbness in both of her hands which makes it difficult to write.  (R. at 52.)

### 2.    Vocational Expert Testimony

VE Charles H. McBee testified that a person with Plaintiff's residual functional capacity ("RFC"), as propounded by the ALJ, could perform unskilled work at a medium exertional level that exists in the national and regional economy, such as a hand packager, production helper and conveyor offbearer.  (R. at 56-57.) As for such an individual's ability to perform work at the *light exertional level* with the same postural and mental limitations, the VE testified that such an individual could perform work as a photocopy machine operator, an inspector and hand packager and a palletizer.  (R. at 57-58.)

However, when asked to assume an individual consistent with Dr. Verma's
August 26, 2013 physical RFC assessment, the VE testified that such an individual
would be able to perform *less than a full range of sedentary work* and *less than a
full range of light work* and would "have great difficulty in performing any job at
any exertional level."  (R. at 62; *see also* R. at 58, 367-370.)

### D.   The Administrative Decision[3]

ALJ Bright rendered her decision on March 20, 2014 and determined that
Plaintiff met the insured status requirements of the Social Security Act through
September 30, 2012.  (R. at 14.)  For purposes of this appeal, certain findings bear
mentioning:  **at Step 2**, the ALJ found that Plaintiff has the following severe

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4);
see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates
the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if
fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?
    3.     Do the claimant's severe impairments, alone or in combination, meet
or equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.     Considering the claimant's residual functional capacity, can the
claimant perform his or her past relevant work?
    5.     Considering the claimant's age, education, past work experience, and
residual functional capacity, can the claimant perform other work available in the
national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments:  degenerative disc disease, arthritis, scoliosis, obesity, depression and anxiety (R. at 14); **at Step 4**, the ALJ found that Plaintiff has the RFC to perform less than a full range of light work, specifying certain postural limitations (occasionally climb ladders, ropes, scaffolds, ramps or stairs; balance; kneel; stoop; crouch; or crawl) and certain *limitations to sustained concentration and persistence* (retains the ability to perform simple, routine, repetitive tasks consistent with unskilled work in a static environment with few changes and superficial interaction with supervisors, coworkers, and the public; can make simple work-related decisions) (R. at 17-22); and, **at Step 5**, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 22-25.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

8

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.   The ALJ properly weighed the opinion evidence as to Plaintiff's physical limitations.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence, because the ALJ did not properly evaluate the opinions of Plaintiff's treating sources, who established "*physical* limitations greater than those set forth in the ALJ's RFC . . . ." (DE 15 at 5, 12-17 (emphasis added).)  Thus, this report is limited to a review of the ALJ's treatment of opinion evidence as to Plaintiff's physical limitations and its effect upon the resulting RFC.

### 1.   Evaluating opinion evidence under 20 C.F.R. §§ 404.1527, 416.927

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or

psychologists." 20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r*

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th

Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that

requires a written articulation of each of the six regulatory or "*Wilson* factors"

listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of

Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20,

2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).

In other words, the regulations do not require "an exhaustive factor-by-factor

---

*Id.*

analysis." *Francis v. Commissioner Social Sec. Admin.*, 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson* , 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of 20 C.F.R. §§ 404.1527(c), 416.927(c).  *Francis*, 414 F.App'x at 805 (quoting *Wilson,* 378 F.3d at 547).  I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

2. **The ALJ's analysis of the medical record and opinion evidence**

a. **The ALJ properly discounted treating physician Rohit Verma, M.D.'s opinions.**

Plaintiff contends that the ALJ failed to give proper weight to the opinions and assessments of "longtime primary care provider" Dr. Verma, specifically arguing that (a) Dr. Verma's medical opinions are "consistent with the underlying medical evidence[,]" and (b) the ALJ's rationale for discounting Dr. Verma's medical opinions "is inconsistent with Agency policy and not supported by substantial evidence."  (DE 15 at 6, 12-14, 14-17.)  As to the latter, Plaintiff takes

14

issue with the ALJ's assessment of the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c).  (DE 15 at 6, 15-16.)

The Sixth Circuit "has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  Here, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, Dr. Verma's opinions on the basis that they were unsupported or inconsistent as contemplated by 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).

Throughout her opinion, the ALJ made various assignments of weight to Dr. Verma's records and explained her reasons for doing so.  First, at Step 2, the ALJ assigned "no weight" to Dr. Verma's August 26, 2013 opinion that Plaintiff needed to "avoid extremes of temperature, humidity, dust, fumes, gases, etc.[,]" explaining that Plaintiff "was able to function while being exposed to pulmonary irritants on a daily basis through her smoking habit . . . ."  (R. at 14, 365; *see also* R. at 369.)[5] The ALJ supported this statement by expressly referring to three of Dr. Verma's notes that Plaintiff was a chronic smoker, as well as an April 23, 2013 chest x-ray

---

[5] Although the ALJ here cites Dr. Verma's mental medical source statement (R. at 364-366 [Ex. 8F]), Dr. Verma also addressed environmental limitations in his physical RFC assessment (R. at 367-370).

15

which revealed a "[s]mall opacity in the medial right lung base which may represent crowded vasculature, atelectasis or infiltrate."  (R. at 14, 341, 355, 359 and 362.)  In addition, pointing to Dr. Verma's spine medical source statement, which noted that Plaintiff had severe headache pain associated with impairment of the spine, the ALJ stated, "[t]here is no objective evidence relative to the severity claimed by the doctor in her treatment notes."  (R. at 14, 371-376 [Ex. 10F].)  Thus, it is clear that, at least at Step 2, the ALJ discounted Dr. Verma's opinions as to environmental limitations and severity of headaches associated with spinal impairment as either unsupported or inconsistent.  20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4); *see also Francis*, 414 F. App'x at 806 ("The ALJ thus cited specific conflicts between Dr. Wakham's opinion and substantial medical, lifestyle, and opinion evidence.").

Second, in the Step 4 RFC determination, the ALJ assigned "little weight" to Dr. Verma's physical opinions - presumably the August 26, 2013 physical RFC medical opinion and perhaps even the same-day spine medical source statement (R. at 21, 367-370, 371-376) -  on the basis that these were not "supported by the objective record."  The ALJ further explained:

> There is no basis for the extreme limitations imposed by the doctor and h[is] office notes do not reflect the level of limitation alleged relative to her exertional and postural abilities including that she would miss up to four days of work a month.  Moreover, there is no evidence to support any claimed limitations in the claimant's ability to grasp, handle, or perform fine manipulation.  This is especially true as

16

> the doctor's own records reflected at times that the claimant did not
> have any complaints when seen.  The undersigned further notes that
> the severity of the limitations imposed by the doctor paint a picture of
> an individual who is almost bedridden which is contrary to her office
> treatment notes and the objective record.

(R. at 21; *see also* R. at 367-370.)  Here, the Court assumes the ALJ is referring to

Dr. Verma's September 14, 2012 notes that Plaintiff had no complaints and May

28, 2013 notes that Plaintiff felt well "without any specific complaints."  (R. at

362, 353.)  In addition, the ALJ noted Plaintiff's testimony about a cane and neck

brace and Dr. Verma's statement that Plaintiff occasionally uses a cane or other

assistive device.  (R. at 21, 50 & 374.)  Then, the ALJ concluded that such needs

were not supported by the objective record, apparently referring to the April 23,

2013 emergency room notes which indicate normal range of motion and Dr.

Verma's May 28, 2013 notes that Plaintiff's gait is within normal limits (WNL).

(R. at 21, 337, 353.)[6]  Thus, the ALJ discounted Dr. Verma's opinions as to

Plaintiff's exertional, postural and manipulative limitations, as well as his opinion

on absenteeism, as either unsupported or inconsistent.  20 C.F.R. §§

404.1527(c)(3),(4), 416.927(c)(3),(4); *see also Leeman v. Comm'r of Soc. Sec.*, 449

F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions

---

[6] Dr. Verma's August 26, 2013 spine medical source statement also assessed
limited range of motion (ROM).  (See R. at 371.)

17

that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.").

Third, again in the Step 4 RFC determination, the ALJ explained that the "little weight" assigned to Dr. Verma's opinions was supported by the dichotomy between (a) Plaintiff's January 15, 2014 testimony that the side effect of her bladder medication is dry mouth and (b) Dr. Verma's August 26, 2013 spine medical source statement noting that Plaintiff's medication side effects include drowsiness, tiredness and nausea. (R. at 22, 47, 372.) Thus, at least as to the side effects of Plaintiff's medications, the Court may conclude that "the ALJ did not err in refusing to give probative weight to a treating physician's opinion that is contradicted by statements from the claimant himself." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697 (6th Cir. 2007).[7]

Finally, I observe that Dr. Verma's spine medical source statement did not comment upon "frequency and length of contact," (R. at 371), which might have informed the ALJ on the factor of "Length of the treatment relationship and the frequency of examination[,]" 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, this is not consequential here. The ALJ's review of the Dr. Verma's office treatment records and progress notes – including specific citation to records

---

[7] Plaintiff is only contesting the ALJ's Step 4 RFC physical limitations; therefore, this report does not evaluate the "little weight" assigned to Dr. Verma's mental medical source statement (R. at 21, 364-366).

from 2011, 2012 & 2013 - tells the Court that the ALJ was aware of the length of Plaintiff's treatment relationship and the frequency of her evaluation with Dr. Verma.  (*See* R. at 14, 18, 19 & 20; *see also* R. at 316-333 [Ex. 4F], 343-363[Ex. 7F].)

The Court takes note of Plaintiff's argument that Dr. Verma's medical opinions "are consistent with the underlying medical evidence," and, in particular, Plaintiff's supporting reference to Dr. Verma's May 24, 2012 office treatment records, which indicate, *inter alia*, that:  (a) Plaintiff's neck pain has worsened; (b) she "gets severe pains in her neck even if she turns her head to look downwards[;]" (c) impressions include chronic back pain, chronic neck pain and a history of an old C2 fracture; and, (d) she was referred to a neurosurgical specialist.  (DE 15 at 13, R. at 323 [Ex. 4F].)  Still, the ALJ pointed to several of Dr. Verma's treatment records and progress notes (*see* R. at 18 [Exs. 4F, 7F]), later noting that "the medical evidence and the claimant's testimony show that her impairments have been managed via conservative care by way of medication management due to her normal medical findings."  (R. at 20.)[8]  The ALJ is permitted to consider the

---

[8] Consistent with the January 15, 2014 hearing discussion, the ALJ noted that Plaintiff's file was kept open for counsel's submission of a list of Plaintiff's medications; however, the ALJ's March 20, 2014 decision states this did not occur. (R. at 11, 34.)  Nonetheless, in addition to Plaintiff's testimony about her medications (R. at 45-47), the administrative record contains medical records submitted by Dr. Verma indicating that, at various times, Plaintiff's medications included Loratadine, nicotine patch, Albuterol, Ditropan® (oxybutynin), Flonase®

conservative nature of Plaintiff's treatment.  *Francis*, 414 F. App'x at 805 (when assigning no weight to the Plaintiff's treating family osteopath's opinion, the ALJ "cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians.")  Moreover, while Plaintiff's counsel represented that Plaintiff did not have insurance at the time of the January 15, 2014 hearing (R. at 37), Plaintiff does not seem to argue that a lack of insurance is at issue here with respect to her choice and/or course of treatment.  In fact, in both her motion and her reply, Plaintiff argues that Dr. Verma treated her "over 30 times over the course of several years . . . ."  (DE 15 at 15; *see also* DE 20 at 1, 3.)

In sum, as set forth above, the ALJ gave good reasons at Step 2 and Step 4 for assigning less than controlling weight to Dr. Verma's opinions.  Thus, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, Dr. Verma's opinions on the basis that they were unsupported or inconsistent as contemplated by 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4).

---

(fluticasone), Lorcet® (hydrocodone bitartrate and acetaminophen), Motrin® (ibuprofen), Prilosec® (omeprazole), Xanax® (alprazolam), Zoloft® (sertraline), Zyrtec® (cetirizine), and/or Tessalon Perles (benzonatate).  (R. at 323 [Ex. 4F], 355 & 361 [Ex. 7F].)  In fact, in the Step 4 RFC discussion, the ALJ expressly mentions that Dr. Verma's May 24, 2012 list of Plaintiff's medications includes Motrin, Lorcet, Xanax and Zoloft.  (*See* R. at 18, 323.)

**b.     The consultative examinations of Dr. Gummadi and Dr. Shelby-Lane pre-date Plaintiff's alleged onset of disability, and, thus, are of limited relevance.**

The administrative record contains evidence of two consultative examinations - the June 25, 2011 opinion of psychiatric consultative examiner H. Gummadi, M.D. (R. at 302-306 [Exhibit 2F]) and the August 20, 2011 opinion of medical consultative examiner Cynthia Shelby-Lane, M.D. (R. at 307-315 [Exhibit 3F]).  Plaintiff correctly observes that the ALJ did not "discuss or assign any weight to the consultative examination opinions[,]" acknowledging that these opinions "were dated and likely related to an earlier application for benefits[.]" (DE 15 at 15, 16.)[9]  In fact, the absence of express discussion of these items is not surprising, because these statements pre-date Plaintiff's alleged September 1, 2011 onset of disability.  As such, these opinions are of limited relevance.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

---

[9] As the ALJ's opinion explains, Plaintiff's previously filed, January 26, 2011 applications for DI and SSI benefits were denied on September 1, 2011, and no appeals were filed.  (R. at 11.)

Nonetheless, keeping in mind that Plaintiff is only challenging the physical limitations set forth in the ALJ's Step 4 RFC determination,[10] I note that Dr. Shelby-Lane's August 20, 2011 internal medicine report noted several observations about Plaintiff's bones and joints (including that Plaintiff does not use a cane or aid for walking, her gait and stance are within normal limits, she is able to squat and bend 70% of the distance and recover, she has equal bilateral grip strength) and listed impressions of arthritis, scoliosis, right arm twisted behind her back at birth, anxiety, depression and heartburn.  (R. at 308-310.)  Therefore, at least some of these observations appear to be consistent with Dr. Verma's May 28, 2013 notes that Plaintiff's gait was within normal limits (WNL) (R. at 353), as well as the ALJ's March 20, 2014 Step 4 RFC determination that Plaintiff had occasional postural limitations (R. at 17; *see also* R. at 18).  Accordingly, the Court

---

[10] Although Plaintiff's motion maintains that, "[w]hile Ms. Davis did not undergo therapy for her mental impairments, her conditions were noted in the records[,]" this appears within the section of her motion asserting that "Dr. Verma's medical opinions are consistent with the underlying medical evidence."  (DE 15 at 12-14.)  Likewise, in a footnote to her reply brief, Plaintiff explains that she meant to point out how Dr. Verma's opinion regarding Plaintiff's mental impairments was consistent with the degree of mental impairment assessed in Gummadi's June 25, 2011 notes (R. at 302-306), while acknowledging that she "conceded in her opening brief that Dr. Verma's assessment regarding mental impairments was more tenuous in light of the fact that she had not received formalized mental health treatment . . . ."  (DE 20 at 4 n.3.)

could conclude that the ALJ nonetheless made certain "findings consistent with [Dr. Shelby-Lane's] opinion[.]" *Nelson*, 195 F.App'x at 470.[11]

> ### c.   The ALJ properly considered the opinion of Muhammad Khalid, M.D. (non-examining state agency medical consultant).[12]

The August 30, 2012 physical RFC determination by state agency reviewing physician Dr. Khalid assesses Plaintiff as having numerous exertional and postural limitations.  (R. 70-71.)  Dr. Khalid also opines that Plaintiff did not have manipulative, visual, communicative or environmental limitations.  (R. at 71.)  In assigning this opinion "great weight," the ALJ explained:  "the determination

---

[11] For the sake of argument, Plaintiff notes that if the ALJ had questions or concerns about the state of the evidence, she could have recontacted the treating source (20 C.F.R §§ 404.1520b(c)(1), 416.920b(c)(2)), had a medical expert testify at the hearing, or ordered a consultative examination (20 C.F.R. §§ 404.1519-404.1519b, 416.919-416.919b.).  (*See* DE 15 at 17.)  However, "an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009); *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."), *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

[12] The ALJ also assigned "great weight" to the September 4, 2012 mental RFC assessment of Colin King, Ph.D., a non-examining state agency psychological consultant.  (R. at 22, 71-72.)  However, because Plaintiff is only contesting the ALJ's Step 4 RFC physical limitations, this report does not evaluate the weight assigned to Dr. King's mental RFC assessment.

adequately sets forth the claimant's limitations as discussed above in that the consultant limited the claimant to light work with occasional postural limitations consistent with the claimant's assigned residual functional capacity (Exhibit lA [R. at 64-75])."  (R. at 22.)  Elsewhere in her Step 4 RFC determination, the ALJ referenced several instances of Plaintiff's weight exceeding 220 pounds (*see, i.e.,* R. at 19-20, 327, 323, 357, 360 and 38), as well as the February 23, 2012 MRIs of the cervical spine and lumbar spine, which revealed, among other things, bilateral L5 spondylolysis (without spondylolisthesis), mild lower lumbar spondylosis, and separation of the odontoid tip from the remainder of C2 (*see* R. at 20, 377-378). The ALJ further elaborated:

> . . . giving deference to the claimant's complaints of pain and issues relating to her cervical and lumbar spine and considering her *obesity*, the claimant has been limited to performing a reduced range of light work activity with postural limitations being limited to occasional. This reduced range of work limits the claimant's lifting and carrying and specifically accommodates her *cervical odontoid tip separation* and the postural limitations also take into consideration this condition along with her *mild lumbar spine findings*.

(R. at 20-21 (emphases added).)

The Court recognizes, as Plaintiff argues, that more weight is generally given to the opinions of examining and treating sources than non-examining and non-treating sources, particularly noting that Dr. Verma treated Plaintiff more than 30 times over a several year period. Nonetheless, the regulations provide for the circumstances encountered here.  "When we do not give the treating source's

opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and

(c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of

this section in determining the weight to give the opinion.  We will always give

good reasons in our notice of determination or decision for the weight we give

your treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The

ALJ did so here.

As outlined above, the ALJ considered several of these factors when

determining the weight assigned to Dr. Verma's opinions and then provided "good

reasons" for assigning them "no weight" or "little weight."  Having done so, "an

ALJ can properly rely on the conclusions of a non-examining, record reviewing

physician to support an RFC assessment."  *Gazella v. Comm'r of Soc. Sec.*, No. 13-

11099, 2014 WL 555192, at *11 n.2 (E.D. Mich. Feb. 12, 2014) (Zatkoff, J.,

adopting report and recommendation of Hluchaniuk, M.J.).[13]  Where the non-

examining source's opinion is consistent with the overall record and the treating

---

[13] *See also Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 752 (6th Cir. 2012)
(concluding that medical expert opinions were adequately weighed where
substantial weight was accorded to the opinion of a nonexamining source),
*Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989)
("While the Court recognizes that Dr. Sodeman did not actually treat or physically
examine the claimant, his opinion was based upon the objective evidence of
medical reports made by the claimant's treating physicians and testimony given by
the claimant himself."), *Parham v. Comm'r of Soc. Sec.*, No. 14-CV-14225, 2016
WL 25978, at *2 (E.D. Mich. Jan. 4, 2016) (Steeh, J., accepting report and
recommendation of Whalen, M.J.) ("non-examining physician Dr. Strait found that
Parham retained the ability to perform simple, routine work, consistent with Dr.
Rao's [Plaintiff's treating psychiatrist's] opinions prior to February 2013 . . . .").

source's opinion is not, the ALJ is permitted to give greater weight to the former than to the latter. SSR 96-6P (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *see also Thomas v. Comm'r of Soc. Sec.*, No. 12-11545, 2013 WL 4550198, at *13 (E.D. Mich. Aug. 28, 2013) ("the examining and reviewing state agency physicians described essentially consistent findings regarding plaintiff's functional limitations, and the ALJ reasonably gave some weight to the opinions of those physicians."). Here, Plaintiff factually notes that the ALJ "went on to assign 'great weight' to the state Agency reviewers [Colin King, Ph.D. and Muhammad Khalid, M.D.] opinions on the grounds that they adequately set forth [her] limitations[;]" however, Plaintiff does not challenge the consistency of these opinions with the overall record, let alone identify how these opinions run contrary thereto. (*See* DE 15 at 15.)[14] Having already concluded that the treating physician's [Dr. Verma's] opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency

_____

[14] She does, in the next sentence of her brief, state that, "The ALJ failed to discuss or assign any weight to the *consultative examination* opinions[,]" (emphasis added), but state agency reviewers and consultative examiners are not the same thing. *See* 20 C.F.R. §§ 404.1502, 416.902. In any case, as noted above, the consultative examinations of Dr. Gummadi and Dr. Shelby-Lane pre-date Plaintiff's alleged onset of disability, and, thus, are of limited relevance.

26

with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies. *See Bishop v. Gosiger, Inc.,* 692 F.Supp.2d 762, 774 (E.D. Mich.2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and citations omitted). Accordingly, the Court should affirm the ALJ's accreditation of Dr. Khalid's physical RFC assessment. (R. at 70-71.)

### G.   Conclusion

I conclude that the ALJ properly discounted, or justifiably declined to give controlling weight to, the opinions of Plaintiff's treating physician (Dr. Verma) and appropriately gave significant weight to the opinion of the non-examining state agency medical consultant (Dr. Khalid), and, thus, properly evaluated the opinion evidence in this case under 20 C.F.R. §§ 404.1527(c), 416.927(c). Substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

27

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 29, 2016              s/Anthony P. Patti
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 29, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti